UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NISSAN MOTOR ACCEPTANCE CORP.,

                              Plaintiff,

                                                        7:09-CV-0196
v.                                                      (GTS/ATB)

DEALMAKER NISSAN, LLC; DEALMAKER
AUTO GROUP, LLC; MARK PICARAZZI; and
PHILIP J. SIMAO,

                              Defendants.
_____

APPEARANCES:                            OF COUNSEL:

GOLDBERG SEGALLA LLP                    RICHARD A. BRADEN, ESQ.
  Counsel for Plaintiff                 KENNETH M. ALWEIS, ESQ.
665 Main Street, Suite 400
Buffalo, NY 14203

SCOLARO SHULMAN COHEN                   CHAIM J. JAFFE, ESQ.
  FETTER & BURSTEIN, P.C.               RICHARD E. SCRIMALE, ESQ.
  Counsel for Corporate Defendants
507 Plum Street, Suite 300
Syracuse, NY 13204

McMAHON KUBLICK & SMITH, P.C.           JAN S. KUBLICK, ESQ.
  Counsel for Defendant Simao
500 South Salina Street, Suite 816
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

         Currently before the Court in this breach-of-contract action is a motion, filed by Nissan

Motor Acceptance Corp. ("Plaintiff"), to dismiss the counterclaims asserted by Dealmaker

Nissan, LLC, and Dealmaker Auto Group, LLC ("Defendants"), or, alternatively, for a more

definite statement.  (Dkt. No. 21.)  For the reasons set forth below, Plaintiff's motion to dismiss

Defendants' counterclaims is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint asserts, *inter alia*, the following factual allegations: (1) on or about November 27, 2006, and April 22, 2008, Defendant Dealmaker Nissan, LLC, entered into an Automotive Wholesale Financing and Security Agreement (hereinafter "Agreement") with Plaintiff, pursuant to which Plaintiff agreed to provide secured wholesale inventory financing to Defendant Dealmaker Nissan, LLC; (2) in order to secure its obligation, Defendant Dealmaker Nissan, LLC granted Plaintiff a security interest in Dealmaker Nissan LLC's motor vehicles, parts inventory, furniture, fixtures, equipment, investment property, accounts, contract rights, intangible property, accounts receivable, and all of the proceeds of the same ("Collateral"); and (3) subsequently, Dealmaker Nissan LLC, defaulted on its obligations under the Agreement.  (Dkt. No. 1.)  Based on these allegations, Plaintiff asserts the following claims: (1) breach of contract; (2) replevin; and (3) breach of continuing guarantees.[1]  (*Id*.)  Familiarity with the remaining factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.  (*Id*.)

### B.      Defendants' Counterclaims

Generally, liberally construed, Defendants' Counterclaims assert, *inter alia*, the following factual allegations: (1) "[o]n or about January 28, 2009, and while still discussing vehicle inventories, alleged past due charges and a recapitalization plan, Mr. Westlake [and] Mr. Voorheis[, employees of Plaintiff] . . . began discussing [with Simao Defendants'] used car inventory"; (2) "[i]t was agreed that the Dealership [i.e., Defendants] would sell some of [their]

---

[1]      Plaintiff also asserts a claim for attorney's fees, costs and expenses.  (Dkt. No. 1.)

used cars"; (3) "[s]ome cars were sold to wholesalers and others through the auction process"; (4) "[a]t no point in time did any one of Plaintiff's representatives advise Simao, the Dealership or Dealmaker Auto Group[, i.e., Defendants,] that any resulting deficiency between the sales price and the floor plan amount would be deemed and/or create an out-of-trust situation"; (5) "[a]ll proceeds from the sales were made payable directly to Plaintiff as requested by Plaintiff"; (6) sometime between February 5 and 9, 2009, "Plaintiff accepted and cashed the checks which represented the proceeds from the sale of some of the Dealership's used car inventory"; (7) "[t]he used car inventory was sold in good faith and with the purpose of demonstrating to Plaintiff that the Dealership was committed to moving forward in a positive manner"; (8) "[o]n the morning of February 11, 2009, Simao received a telephone call from Mr. Voorheis[ and Mr. Westlake,] who wanted to discuss the payments arising from the sale of the Dealership's used vehicle inventory"; (9) during that conversation, (a) "the parties continued their discussions about moving the business forward," and (b) "Voorheis and Westlake raised issues that had never ever been discussed, either in writing or verbally, regarding other Dealership liabilities"; (10) "Plaintiff wanted these issues [regarding Dealership liabilities] resolved before it would agree to move forward and reinstate the floor plan"; (11) "Simao . . . requested Plaintiff send him a letter that outlined in detail what he needed to do to return the Dealership to good standing"; (12) on February 12, 2009, Simao received a letter from Plaintiff dated February 11, 2009, which "for the first time, alleged an out-of-trust situation created by the sale of the Dealership's used car inventory"; (13) "upon his receipt of Plaintiff's February 11, 2009 letter, Simao telephoned Mr. Voorheis and questioned him about [it]"; (14) Simao perceived the letter to be ambiguous because it (a) "requested that all amounts set forth therein be paid within approximately 36 hours, that the Dealership's working capital be restored to Plaintiff's guidelines, and that a plan of profitability be provided by February 13, 2009[,]" and (b) "state[d] that[,] if all of these

demands were complied with, then the floor plan was still going to be terminated as of February 27, 2009"; (15) "Simao instructed the Dealership's counsel to send Plaintiff a letter asking for clarification"; (16) Simao's counsel sent Plaintiff a letter dated February 13, 2009, and Simao separately made "numerous efforts to reach Plaintiff by telephone"; (17) on February 20, 2009, an article was printed in Simao's local newspaper indicating that Plaintiff had commenced this action; (18) "[f]rom the time that Simao began conversing with Plaintiff in or about December 2008, Plaintiff knew that its statements of wanting to work with the Dealership and resolve all outstanding issues were false"; and (19) "[t]he Dealership and Dealmaker Auto Group [i.e., Defendants] relied on Plaintiff's representations to their detriment."  (Dkt. No. 15.)

Based on these factual allegations, liberally construed, Defendants assert the following three counterclaims: (1) fraud; (2) misrepresentation; and (3) breach of the duty of good faith and fair dealing.  (*Id*.)

### C.   Plaintiff's Motion

Generally, in support of its motion to dismiss the counterclaims, Plaintiff argues as follows: (1) Defendants' first and second counterclaims, alleging fraud and misrepresentation, must be dismissed for failure to plead the essential elements of these claims with particularity, pursuant to Fed. R. Civ. P. 9(b); (2) Defendants' first and second counterclaims must be dismissed because they are duplicative of Defendants' breach-of-contract claim; and (3) Defendants' third counterclaim, alleging breach of the implied covenant of good faith and fair dealing, should be dismissed for failure to state a claim upon which relief can be granted under New York law.  (*See generally* Dkt. No. 21 [Plf.'s Memo. of Law].)

In Defendants' response to Plaintiff's motion to dismiss the counterclaims, they argue as follows: (1) Defendants' first counterclaim, for fraud, should not be dismissed because Defendants have pled the essential elements of fraud with particularity; (2) Defendants' second

counterclaim, for misrepresentation, should not be dismissed because (a) Defendants have pled

the essential elements of misrepresentation with particularity, and (b) given that a "special

relationship" existed between the parties, Plaintiff had a duty to disclose its intentions before

terminating the financing arrangement and foreclosing on the Collateral; (3) Defendants have

alleged facts plausibly suggesting a counterclaim for breach of the implied covenant of good

faith and fair dealing under New York law; and (4) because the pleadings satisfy the particularity

requirement of Fed. R. Civ. P. 9(b), a more definitive statement is not required.  (*See generally*

Dkt. No. 27 [Defs.' Response Memo. of Law].)

In its reply, Plaintiff reiterates its previously advanced arguments.  (*See generally* Dkt.

No. 28 [Plf.'s Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-

known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P.

12(b)(6), but will direct the reader to the Court's recent decision in *Wade v. Tiffin Motorhomes,*

*Inc.*, 05-CV-1458, 2009 WL 3629674, at \*3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).

### B.    Legal Standard Governing Motion to Dismiss for Failure to Plead Certain Claims with Particularity

"Under [Fed. R. Civ. P.] 9(b), certain claims, [including fraud and misrepresentation],

must . . . be plead with particularity, e.g., a plaintiff must (1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made[,] and (4) explain why the statements were fraudulent."  *Dubai Islamic*

*Bank v. Citibank, N.A.*, 256 F. Supp.2d 158, 162 (S.D.N.Y. 2003); *see also Lerner v. Fleet Bank,*

*N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F.

Supp.2d 474, 484 (S.D.N.Y. 2010) ("Just as with intentional misrepresentation, negligent

misrepresentation must be pled with particularity."). However, "[m]alice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Thus,

while the actual . . . fraud alleged must be stated with particularity . . . the requisite intent of the

alleged perpetrator of the fraud need not be alleged with great specificity." *Wight v.

BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263,

267 [2d Cir. 1996]) [other citation omitted]. As a result, "the more general standard to scienter"

should be applied when a defendant's state of mind is at issue because "a plaintiff realistically

cannot be expected to plead a defendant's actual state of mind." *Wight*, 219 F.3d at 91-92 (citing

*Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 [2d Cir. 1987]).

## III.   ANALYSIS

### A.   Defendants' Counterclaims of Fraud and Misrepresentation

As stated above in Part I.C. of this Decision and Order, Plaintiff seeks the dismissal of

Defendants' counterclaims of fraud and misrepresentation because (1) Defendants have failed to

plead the essential elements of these counterclaims with particularity, pursuant to Fed. R. Civ. P.

9(b), and (2) these counterclaims are duplicative of Defendants' counterclaim for breach of

contract.

Based on the current record, the Court accepts Plaintiff's first argument for four reasons.

First, Defendants have failed to identify the statements that they allege were fraudulent. In fact,

the only "statements" that Defendants even allege that Plaintiff made (through one of its

representatives) include the following: (1) a statement from Mr. Westlake and Mr. Voorheis to

Mr. Simao regarding Defendants' used car inventory; (2) a conversation between these same

individuals "about moving the business forward" and "Dealership liabilities"; and (3) a letter

sent from Plaintiff to Defendants (a) alleging "an out-of-trust situation created by the sale of the

Dealership's used car inventory," (b) "request[ing] that all amounts set forth therein be paid within approximately 36 hours, that the Dealership's working capital be restored to Plaintiff's guidelines, and that a plan of profitability be provided by February 13, 2009[,]" and (c) "stat[ing] that if all of these demands were complied with, then the floor plan was still going to be terminated as of February 27, 2009." (Dkt. No. 15.)[2]

Defendants have failed to identify which, if any, of these statements were fraudulent. For example, Defendants do not allege facts plausibly suggesting that "an out-of-trust" situation was not, in fact, created by the sale of the Dealership inventories. Moreover, even if Plaintiff's statement "about moving the business forward" is somewhat inconsistent with Plaintiff's subsequent actions of requesting that Defendants pay its outstanding debt and commencing the instant action, the fact that Plaintiff may have amended its posture after Defendants sold their used car inventory and an outstanding debt remained does not, without more, render Plaintiff's statements before the inventory sale fraudulent.

Second, even assuming, for the sake of argument, that Defendants had identified the statements that they contend were fraudulent, Defendants have failed to explain *why* the

---

[2]     The Court notes that Defendants also allege that "[a]t no point in time did any one of Plaintiff's representatives advise Simao, the Dealership or Dealmaker Auto Group that any resulting deficiency between the sales price and the floor plan amount would be deemed and/or create an out-of-trust situation." (Dkt. No. 15.) As an initial matter, the allegation that Plaintiff failed to in any way suggest that Defendants would remain responsible for their outstanding debt somehow constitutes fraud and/or a misrepresentation appears implausible, under the factual circumstances alleged. However, even assuming that one of Plaintiff's representatives did not adequately clarify this fact, "an omission does not constitute fraud unless there is a fiduciary relationship between the parties." *Robinson v. Crawford*, 46 A.D.3d 252, 253 (N.Y. App. Div., 1st Dept. 2007). Here, no such fiduciary relationship existed because Plaintiff and Defendants were merely parties to a commercial contract, which does not expressly state the existence of a fiduciary relationship. *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp.2d 731, 733-34 (S.D.N.Y. 2000) (noting that, under New York law, "parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree").

statements were fraudulent.  In other words, the Agreement allows Plaintiff to demand payment

of the outstanding debt in the event of a default, and Defendants have not alleged that they were

not, in fact, in default when Plaintiff made its request.  (Dkt. No. 1, Attach. 1, at 4.)  Moreover,

again, the fact that Plaintiff sought repayment in full after Defendants sold their used car

inventory and an outstanding debt remained does not, without more, explain why Plaintiff's

statement before the sale "about moving the business forward" was fraudulent.  The Court would

only add that it rejects Defendants implicit argument that, by stating that it would work with

Defendants and then demanding payment in full after Defendants sold their used car inventory,

Plaintiff misrepresented its intentions.  This is because, among other things, Defendants have not

alleged facts plausibly suggesting that Plaintiff knew, or should have known, at the time that it

allegedly promised to work with Defendants, that they would be out of trust after selling their

used car inventory.  Moreover, statements that are promissory in nature, and relate solely to

future conduct and events, are not actionable on a negligent misrepresentation or fraud theory.[3]

        Third, although Defendants allege, in conclusory fashion, that "[t]he Dealership and

Dealmaker Auto Group relied on Plaintiff's representations to their detriment," Defendants have

failed to allege facts plausibly suggesting how they reasonably relied, to their detriment, on any

of these alleged false statements.[4]  For example, Defendants do not allege facts plausibly

---

        [3]        *See, e.g., Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987) (noting that, in
order to succeed on fraudulent misrepresentation claim under New York law, former employee
had to prove by preponderance of evidence that employer made misrepresentation as to material
fact which employer knew to be false, for purpose of inducing employee to rely on it, that
employee rightfully did so rely on it in ignorance of its falsity and to his injury, and that
promises were made to employee with present intent by employer not to perform promised acts);
*Lehman v. Garfinkle*, 08-CV-9385, 2009 WL 2973207, at *8 (S.D.N.Y. Sept. 16, 2009) (noting
that "statements [that] are promissory in nature, and . . . relate solely to future conduct and
events [cannot] [a]s a matter of law, . . . form the basis of a negligent misrepresentation claim").

        [4]        Under New York law, "[i]n order to recover for fraud, plaintiffs must show a
representation of material fact, the falsity of that representation, knowledge by the party who

8

suggesting that (1) they would not have been out of trust if they did not sell their used car inventory,[5] or (2) they had the means and ability to resolve the "out-of-trust" situation once it occurred, and that, but for Plaintiff's false statements, they would have done so.  Nor do Defendants allege facts plausibly suggesting that Plaintiff's false statements somehow modified Plaintiff's rights under the Agreement to seek payment in full of the outstanding debt, in light of Defendants' default, and that they reasonably relied on this modification to their detriment.

Finally, with regard to Defendants' misrepresentation counterclaim, despite arguing in their memorandum of law that this claim should not be dismissed because the parties had a special relationship, Defendants failed to allege this fact in their counterclaim.[6]  Moreover, Defendants have failed to allege facts plausibly suggesting that Plaintiff held or appeared to hold

made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." *Pope v. Saget*, 29 A.D.3d 437, 441 (N.Y. App. Div., 1st Dept. 2006).  "To show reliance, [the plaintiff] must demonstrate that [it] was induced to act [or] refrain from acting to [its] detriment by virtue of the alleged misrepresentation or omission."  *Shea v. Hambros PLC*, 244 A.D.2d 39, 46-47 (N.Y. App. Div., 1st Dept 1998) (internal quotation marks and citation omitted).  The reliance must also be reasonable.  *J.A.O. Acquisition Corp. v. Stavitsky*, 18 A.D.3d 389, 391 (N.Y. App. Div., 1st Dept 2005).

[5]     The Court notes that Defendants allege that Plaintiff induced them to sell their used car inventory by expressing a willingness to work with Defendants if they did so. However, if Defendants would have been out of trust if they did not sell their used car inventory, then they suffered no detriment because, regardless of what Plaintiff told Defendants, they would have had to sell the used car inventory.

[6]     "The New York Court of Appeals has held that three factors are relevant to this element of a negligent misrepresentation claim: (1) whether the defendant 'held or appeared to hold unique or special expertise'; (2) whether there was 'a special relationship of trust or confidence' between the parties; and (3) 'whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'"  *DeBlasio v. Merrill Lynch & Co., Inc.*, 07-CV-0318, 2009 WL 2242605, at *33 (S.D.N.Y. July 27, 2009) (quoting *Kimmell v. Schaeffer*, 89 N.Y.2d 257, 264 [N.Y. 1996]).  "[W]here . . . a 'special relationship' is nowhere pled, and the allegations with respect to the other *Kimmell* factors are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6)."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004).

"unique or special expertise." To the contrary, the allegations in the counterclaim make clear that Defendant Simao was a sophisticated businessman, and that the parties entered into an arms' length transaction. *See AJW Partners LLC v. Itronics Inc.*, 68 A.D.3d 567, 568 (N.Y. App. Div., 1st Dept. 2009) (dismissing negligent misrepresentation and breach of fiduciary duty counterclaims because "there can be no fiduciary obligation in a contractual arm's length relationship between a debtor and note-holding creditor"); *Solondz v Barash*, 225 A.D.2d 996, 998 (N.Y. App. Div., 3d Dept. 1996) (noting that "[a] 'special relationship' requires a closer degree of trust than an ordinary business relationship").

Furthermore, under the circumstances, the Court accepts Plaintiff's second argument for two reasons. As an initial matter, Defendants have not responded to this argument. As a result, Plaintiff's burden with regard to this argument is lightened such that, in order to succeed, it need only show its entitlement to the relief requested in its motion, which has appropriately been characterized as a "modest" burden. *Dottolo v. Byrne Dairy, Inc.*, 08-CV-0390, 2010 WL 2560551, at *7 (N.D.N.Y. June 22, 2010) (Suddaby, J.) (collecting cases). For the reasons stated by Plaintiff in its motion papers, the Court finds that Plaintiff has met this lightened burden.

In any event, the Court finds that Plaintiff's argument would survive even the heightened scrutiny appropriate on a contested motion. This is because a counterclaim for fraud or misrepresentation that arises out of identical facts and circumstances as a counterclaim alleging breach of the implied covenant of good faith and fair dealing is duplicative of that breach of the implied covenant of good faith and fair dealing counterclaim.[7] Here, Defendants' fraud and

---

[7]     *See Sutton Assoc. v. Lexis-Nexis*, 761 N.Y.S.2d 800, 804 (N.Y. Sup. Ct., Nassau County 2003) ("[T]he complaint alleges that Lexis-Nexis fraudulently induced Sutton to pay exorbitant subscription rates, but fails to identify any specific contractual provision actually breached by Lexis. . . . Accordingly, the third cause of action is duplicative of and merely recasts Sutton's unavailing fraud theory as a purportedly independent 'implied duty' claim."); *Merzon v. Lefkowitz*, 289 A.D.2d 142, 143 (N.Y. App. Div., 1st Dept. 2001) (noting that

misrepresentation claims are based on Plaintiff's alleged false statements of wanting to work with the Dealership to resolve outstanding issues.  Similarly, Defendants' counterclaim alleging breach of the implied covenant of good faith and fair dealing is based on Plaintiff "induc[ing] [Defendants] into going out of trust[,]" presumably by making false statements of wanting to work with the Dealership to resolve outstanding issues.

For these reasons, Defendants' counterclaims of fraud and misrepresentation are dismissed.

**B.      Defendants' Counterclaim of Breach of the Implied Covenant of Good Faith and Fair Dealing**

As stated above in Part I.C. of this Decision and Order, Plaintiff seeks the dismissal of this counterclaim because Defendants have failed to state a claim upon which relief can be granted under New York law.  Based on the current record, the Court accepts Plaintiff's argument.

"In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative; however, in some cases 'a party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations.'" *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp.2d 384, 425 (S.D.N.Y. 2007) (quoting *Chase Manhattan Bank v. Keystone Distrib., Inc.*, 873 F. Supp. 808, 815 [S.D.N.Y. 1994]). "When 'the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the underlying contract,' the two claims are duplicative." *CSI Inv. Partners II, L.P.*, 507 F. Supp.2d at 425 (quoting *In re Houbigant, Inc.*,

---

dismissal of sellers' fraud cause of action against buyers was proper because fraud alleged was merely duplicative of contract claims alleging buyers breached implied covenant of good faith and fair dealing by abandoning parties' intended condominium project in favor of sale to subsequent purchaser for hotel project).

914 F. Supp. 964, 989 [S.D.N.Y. 1995]).  "A claim for breach of the covenant of good faith and fair dealing 'may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.'"  *Id.* (quoting *Sauer v. Xerox Corp.*, 95 F. Supp.2d 125, 132 [W.D.N.Y. 2000]).

Here, Defendants do not allege that Plaintiff breached an express provision of the Agreement.  Rather, Defendants allege, in conclusory fashion, that "Plaintiff breached its obligation of good faith and fair dealing with [Defendants] . . . [by] act[ing] arbitrarily and in bad faith in so far as it induced [Defendants] into going out of trust under the applicable financing agreements."  (Dkt. No. 15, at ¶¶ 77, 78.)  As an initial matter, these scant and conclusory allegations do not satisfy the pleading standards under Fed. R. Civ. P. 8.  *See, e.g., Ferguson v. Lion Holding, Inc.*, 478 F. Supp.2d 455, 469 (S.D.N.Y. 2007) ("To prove a violation of the implied covenant of good faith and fair dealing, conclusory allegations of a party's failure to act in good faith alone are insufficient; specific factual allegations of a party's bad faith acts are required.").

Moreover, even assuming, for the sake of argument, that Defendants' counterclaim included sufficient factual allegations of Plaintiff's bad faith (e.g., based on the fact that Defendants alleged that Plaintiff promised to work with Defendants to resolve outstanding issues, and that Plaintiff subsequently took actions to recover its outstanding debt in light of Defendants' default), these allegations are not casually connected to Defendants' allegation that Plaintiff induced them into going out of trust.  In other words, there is no casual connection between Defendants' allegation that (1) Plaintiff acted in bad faith in taking the actions that it took *after* Defendant was out of trust, and (2) Plaintiff induced Defendants into going out of trust.  This is because, again, Defendants have not alleged facts plausibly suggesting that Plaintiff knew, or should have known, at the time that it allegedly promised to work with

Defendants, that they would be out of trust after selling their used car inventory.  Finally, it is worth noting that the implied covenant of good faith and fair dealing cannot be construed so liberally as to undermine Plaintiff's decision to exercise its rights under the Agreement.[8]

For these reasons, Defendants' counterclaim of breach of the implied covenant of good faith and fair dealing is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to dismiss Defendants' counterclaims (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Defendants' counterclaims (Dkt. No. 15) are **DISMISSED**.

Dated: January 11, 2011
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[8]     *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006) (noting that the implied covenant "does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract") (citation and internal quotation marks omitted); *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp.2d 428, 445 (S.D.N.Y. 2010) ("When the Bank declared an Additional Termination Event and charged a payment upon early termination, the Bank was exercising its rights under the contract. The implied covenant does not extend so far as to undermine a party's general right to act on its own interests. Defendants may not employ the covenant as a means of forcing the Bank to forbear from exercising its contractual rights.") (internal quotation marks and citation omitted).