UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NISSAN MOTOR ACCEPTANCE CORP.,

                    Plaintiff,

v.                                                                              7:09-CV-0196
                                                                                (GTS/ATB)
DEALMAKER NISSAN, LLC; DEALMAKER
AUTO GROUP, LLC; MARK PICARAZZI; and
PHILIP J. SIMAO,

                    Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| GOLDBERG SEGALLA, LLP | BRUCE W. HOOVER, ESQ. |
|   Counsel for Plaintiff | KENNETH M. ALWEIS, ESQ. |
| 665 Main Street, Suite 400 | RICHARD A. BRADEN, ESQ. |
| Buffalo, New York 14203 | |
| | |
| SCOLARO SHULMAN COHEN | CHAIM J. JAFFE, ESQ. |
|   FETTER & BURNSTEIN, P.C. | RICHARD E. SCRIMALE, ESQ. |
|   Counsel for Corporate Defendants | |
| 507 Plum Street, Suite 300 | |
| Syracuse, New York 13204 | |
| | |
| McMAHON KUBLICK & SMITH, P.C. | JAN S. KUBLICK, ESQ. |
|   Counsel for Defendant Simao | |
| 500 South Salina Street, Suite 816 | |
| Syracuse, New York 13202 | |

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by Nissan Motor
Acceptance Corporation ("Plaintiff") against Dealmaker Nissan, LLC, Dealmaker Auto Group,
LLC, Mark Picarazzi, and Philip Simao ("Defendants"), is Plaintiff's motion for summary
judgment on Counts One, Three, and Four of its Complaint.  (Dkt. No. 46.)  For the reasons set
forth below, Plaintiff's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges the following facts.

On November 27, 2006, and April 22, 2008, Plaintiff entered into an Automotive Wholesale Financing and Security Agreement ("Wholesale Financing Agreement") with Defendant Dealmaker Nissan, LLC ("Defendant Nissan").  (Dkt. No. 1 at 2 [Plf.'s Compl.].)  The Wholesale Financing Agreement provided that Plaintiff would provide secured wholesale inventory floor plan financing to Defendant Nissan.  (*Id.* at 1-2.)  To secure its obligations under the Wholesale Financing Agreement, Defendant Nissan granted Plaintiff a security interest in Defendant Nissan's collateral, which included motor vehicles, parts inventory, furniture, fixtures, equipment, investment property, accounts, contract rights, intangible property, accounts receivable, and all of the proceeds of the same.  (*Id.* at 3.)  Plaintiff properly perfected its security interest in Defendant Nissan's collateral.  (*Id.*)

As of the date of the filing of Plaintiff's Complaint, Defendant Nissan has been and is in material default of its obligations to Plaintiff under the Wholesale Financing Agreement.  (*Id.*)  Plaintiff has made repeated demands on Defendant Nissan to cure its defaults.  (*Id.* at 4.)  Defendant Nissan has failed to comply with Plaintiff's demands.  (*Id.*)  As a result, Defendant Nissan remains obligated to Plaintiff under the Wholesale Financing Agreement.  (*Id.*)

On November 27, 2006, Defendants Dealmaker Auto Group, LLC ("Defendant Auto Group"), Mark Picarazzi ("Defendant Picarazzi"), and Philip J. Simao ("Defendant Simao") executed Continuing Guaranty Agreements ("Continuing Guaranties") of the obligations of Defendant Nissan to Plaintiff.  (*Id.* at 6.)  Defendants Auto Group, Picarazzi, and Simao have subsequently failed and/or refused to make payment of Defendant Nissan's indebtedness to Plaintiff.  (*Id.*)

Based on these factual allegations, Plaintiff claims that Defendant Nissan breached the Wholesale Financing Agreement (*id.* at 4) and that Defendants Auto Group, Picarazzi, and Simao breached the Continuing Guaranties (*id.* at 6). As relief, Plaintiff initially sought $1,069,878.04[1] in monetary damages, jointly and severally, against all of the defendants. (*Id.* at 7.) Plaintiff also sought, and still seeks, injunctive relief and attorneys fees and costs. (*Id.* at 5-6, 7-8.) For a complete recitation of Plaintiff's factual allegations, claims, and requested relief, reference is made to Plaintiff's Complaint. (*See generally* Dkt. No. 1.)

### B.   Plaintiff's Motion For Summary Judgment

On March 12, 2010, upon Order of the Court, the Clerk of the Court entered a default judgment as to liability only against Defendant Picarazzi pursuant to Fed. R. Civ. P. 55(b)(1) and Local Rule 55.2(a) of the Local Rules of this Court. (Dkt. No. 40.) The Court declined to enter a default judgment as to damages against Defendant Picarazzi pending a hearing on the matter. (Text Order dated Sept. 8, 2009; Dkt. Nos. 39, 40.) As a result, Plaintiff's pending motion for summary judgment is against the remaining Defendants: Defendants Nissan, Auto Group, and Simao.

Generally, in support of their motion for summary judgment, Plaintiff argues that Defendants breached the terms of the Wholesale Financing Agreement and Continuing Guaranties, both of which are unambiguous, unconditional, written documents, enforceable by their terms without resorting to extrinsic evidence. (Dkt. No. 56, Attach. 9 at 13-16.) Regarding damages, Plaintiff has submitted an affidavit from Todd Voorhies ("Voorhies"), Plaintiff's

---

[1]      As discussed below in Part III.C. of this Decision and Order, Plaintiff has reduced the amount of its demand since the date of Plaintiff's Complaint. More specifically, on September 19, 2011, Plaintiff requests an award of $316,212.62, plus interest between September 1, 2011, through the entry of judgment. (Dkt. No. 46, Attach. 8 at 6; Dkt. No. 46, Attach. 9 at 11, 17.)

Manager of Consumer Credit, illustrating Plaintiff's damages in the amount of $316,212.62, plus interest from September 1, 2011, through the date of entry of judgment, plus attorneys fees and costs. (Dkt. No. 46, Attach. 1.)

Generally, in Defendants' response to Plaintiff's motion for summary judgment,[2] they argue that there is a genuine dispute of material fact as to whether Plaintiff's conduct was in bad faith and whether that bad faith contributed to Defendant Nissan's default under a theory of "deepening insolvency." (Dkt. No. 48, Attach. 9 at 8-14.)  In addition, Defendants argue that, even if the Court were to find Defendants liable under the Wholesale Financing Agreement and Continuing Guaranties, Fed. R. Evid. 1002 would preclude the Court from relying on a document entitled "#3223 Dealmaker Nissan Deficiency Calculation" ("the Worksheet") submitted in support of Voorhies' affidavit, calculating of Plaintiff's damages. (*Id.* at 17-20.)

Generally, in their reply, Plaintiff argue as follows: (1) Defendants waived the right to assert a defense based on a theory of deepening insolvency; (2) even if Defendants did not waive their right to assert a defense based on a theory of deepening insolvency, the defense does not apply to breach-of-contract actions; and (3) Fed. R. Evid. 1002 does not preclude the Court from

---

[2]     The corporate Defendants–Defendants Nissan and Auto Group–submitted a full response (including a Rule 7.1 Response, Memorandum of Law in Opposition, with exhibits) to Plaintiff's motion for summary judgment. (Dkt. No. 48.)  Defendant Simao submitted a Rule 7.1 Response. (Dkt. No. 49, Attach.1.)  Defendant Simao also submitted an affirmation in opposition to Plaintiff's motion, attempting to adopt by reference the arguments and factual assertions set forth by the corporate Defendants. (Dkt. No. 49.)  Counsel for Defendant Simao is respectfully reminded that, under this District's Local Rules of Practice, a party may not articulate a legal argument simply by "incorporating by reference" the argument presented in another document. *See Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *9 n.65 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("A party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in another document."). Setting aside the risk that such reference could cause the referring document to violate the District's rule on page limitations (once it is incorporated into the referred document), such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which "incorporated" arguments are actually being relied upon.

relying on Voorhies' affidavit and its supporting documents, including the Worksheet.  (*See generally* Dkt. No. 52.)

###    C.    Undisputed Material Facts

Generally, the following facts are not disputed by the parties.  (*Compare* Dkt. No. 46, Attach. 8 [Plf.'s Rule 7.1 Statement] *with* Dkt. No. 48, Attach. 10 [Defs.' Rule 7.1 Response].) On November 27, 2006, and April 22, 2008, Defendant Nissan entered into the Wholesale Financing Agreement with Plaintiff pursuant to which Plaintiff agreed to provide secured wholesale inventory floor plan financing to Defendant Nissan.  The Wholesale Financing Agreement established the terms under which Plaintiff would provide Defendant Nissan with a wholesale line of credit to finance new and used vehicles, parts, and other merchandise on a discretionary basis.  As part of Plaintiff's commitment to extending credit to Defendant Nissan, it required that Defendants Auto Group, Picarazzi, and Simao execute Continuing Guaranties guaranteeing the obligations of Defendant Nissan.

Upon Defendants' alleged default on its obligations under the Wholesale Financing Agreement, Plaintiff made repeated demands for Defendant Nissan to cure its various defaults and pay amounts due and owing to Plaintiff.  Pursuant to the Wholesale Financing Agreement's terms, Plaintiff had the option of terminating the Wholesale Financing Agreement and declaring all indebtedness immediately due and payable.  On January 14, 2009, Plaintiff delivered notice to Defendants stating that it was suspending credit immediately under the Wholesale Financing Agreement, and that the Wholesale Financing Agreement would terminate effective February 27, 2009.  Plaintiff also made demands on Defendants Auto Group, Picarazzi, and Simao to honor the Continuing Guaranties.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

The Court would only add one point.  When a party opposing a motion for summary judgment fails to respond to an argument contained in the motion, the moving party's burden with respect to that argument is lightened such that in order to succeed, the argument need only have facial merit, which has been characterized as a "modest burden."  *Rescuecom Corp. v. Chumley*, 07-CV-0690, 2011 WL 2791272, at *3 & n.4 (N.D.N.Y. July 14, 2011) (Suddaby, J.) (collecting authorities).

### B.   Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 46, Attach. 9 [Plf.'s Memo. of Law]; Dkt. No. 48, Attach. 9 [Defs.' Opp'n Memo. of Law]; Dkt. No. 52, [Plf.'s Reply Memo. of Law].)

III.    **ANALYSIS**

    A.    **Whether Defendant Nissan Is Liable For Breach of Contract Under the Wholesale Financing Agreement**

After carefully considering the parties' arguments on the issue, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 46, Attach. 9 [Plf.'s Memo. of Law].)  The Court would add only three points.

First, Defendants have not adduced sufficient admissible evidence establishing that there is a genuine dispute of material fact as to whether Defendants Nissan breached the Wholesale Financing Agreement.  More specifically, although Defendants deny that Defendant Nissan breached its obligations under the terms of the Wholesale Financing Agreement in Defendants' Rule 7.1 Response, Defendants failed to support that denial with "a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 7.1(a)(3).  In addition, in their opposition memorandum of law, it appears that Defendants actually concede that Defendant Nissan breached the Wholesale Financing Agreement, thus lightening Plaintiff's burden on its motion such that Plaintiff's argument need only have facial merit.  (Dkt. No. 48, Attach. 9 at 12 & n.3; *see also* Dkt. No. 12 at 4-9.)  *Rescuecom Corp.*, 2011 WL 2791272, at 3 & n.4.  In any event, after carefully reviewing all of Defendants' papers in opposition, the Court finds there is no genuine dispute of material fact as to whether Defendant Nissan breached its obligations under the Wholesale Financing Agreement by (1) failing to pay sums due and owing for wholesale interest obligations, (2) failing to maintain minimum capitalization amounts required by Plaintiff under the Wholesale Financing Agreement, and (3) engaging in sales of vehicles without paying off the entire loan balance for vehicles.

Second, the Court finds that Defendants' "deepening insolvency" argument is without merit. Despite Defendants' efforts to persuade the Court otherwise, the Court finds that there is no meaningful distinction between asserting a counterclaim for "deepening insolvency" and "referenc[ing] . . . [d]eepening [i]nsolvency . . . for the purposes of establishing that Plaintiff[] engaged in acts of bad faith which contributed to the default for which it now seeks to hold Defendant[s] liable under the guaranty." (Dkt. No. 48, Attach. 9 at 12 n.3.) For this reason, the Court construes Defendants' reference to, and analysis of, "deepening insolvency" as an attempt to assert, and rely on, a counterclaim. However, that counterclaim is not contained in their Answer.

To the extent Defendants are attempting to move to amend their Answer to include a "deepening insolvency" counterclaim, that motion is denied.[3] Defendants have failed to provide any justification for failing to include this counterclaim in their Answer. (*See generally* Dkt. No. 48, Attach. 9.) In any event, the Court finds that permitting Defendants to amend their Answer would be futile because a "deepening insolvency" counterclaim would fail on the merits.

New York law does not recognize "deepening insolvency" as an independent cause of action.[4] Instead, "New York courts regard 'deepening insolvency' as a theory of damages that may result from the commission of a separate tort." *In re Global Serv. Group, LLC.*, 316 B.R. 451, 458 (S.D.N.Y. 2004). However, "[t]he distinction between 'deepening insolvency' as a tort

---

[3]        *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Rule 15(a) [of the Federal Rules of Civil Procedure] provides that leave to amend [a pleading] 'shall be freely given.' Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and . . . the resulting prejudice to the opposing party.").

[4]        *See In re Hydrogen, LLC*, 431 B.R. 337, 358 (S.D.N.Y. 2010) ("[D]eepening insolvency is not recognized as an independent cause of action under New York law . . . .") (collecting cases); *In re Global Serv. Group, LLC.*, 316 B.R. 451, 458 (S.D.N.Y. 2004) ("No reported New York case . . . has ruled that 'deepening insolvency' is an independent tort.").

or damage theory may be one unnecessary to make . . . [because] [p]rolonging an insolvent corporation's life, without more, will not result in liability under either approach." *In re Global Serv. Group, LLC*, 316 B.R. at 458.  For this reason, a party "seeking to recover for 'deepening insolvency' must show that [the opposing party] prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt." *Id.* (collecting cases).

Here, Defendants have failed to adduce sufficient admissible evidence establishing that Plaintiff breached a duty to Defendants because (1) by Defendants' own admission, a creditor generally does not owe a fiduciary duty to a debtor (Dkt. No. 48, Attach. 9 at 14 [citing *Muller-Paisner v. TIAA*, 2889 Fed. App'x 461, 466 [2d Cir. 2008]), and (2) the Court dismissed Defendants' counterclaim asserting Plaintiffs violated their breach of the duty of good faith and fair dealing (Dkt. No. 41 at 11-13).  In addition, Defendants' argument that Plaintiff's duty arose from the "addition of a relationship of confidence, trust, or superior knowledge" (Dkt. No. 48, Attach. 9 at 14) is unpersuasive because it "is neither surprising nor improper[ that lenders] prefer to lend to those they know . . . ." *In re Global Serv. Group, LLC.*, 316 B.R. at 458. Finally, Defendants have also failed to adduce sufficient admissible evidence establishing that Plaintiff "committed an actionable tort" against Defendants.  *Id.* at 459 ("A third party is not [liable in tort for] extending credit to an insolvent entity; if it was, most companies in financial distress would be forced to liquidate.").[5]  For all of these reasons, the Court finds that Plaintiff's attempt to assert a "deepening insolvency" counterclaim fails.

---

[5]       Additionally, the Court notes that, Defendants are precluded from relying on a theory of fraud to support a deepening insolvency claim because the Court has already dismissed Plaintiff's fraud counterclaim. (Dkt. No. 41 at 6-11.)  Indeed, all of Defendants' counterclaims (i.e., fraud, misrepresentation, and breach of the duty of good faith and fair dealing) were dismissed.  (*See generally* Dkt. No. 41.)

Third, even assuming that Defendants could establish a "deepening insolvency' theory of damages, after carefully reviewing the pertinent Second Circuit case law regarding "deepening insolvency," the Court has not found any cases applying the theory as one for relief in a breach-of-contract action.  *See e.g.*, *In re Global Serv. Group, LLC*, 316 B.R. at 458 ("New York courts regard 'deepening insolvency' as a theory of damages that may result from the commission of a . . . tort.").  Nor has Court found any case law suggesting that "deepening insolvency" is a defense to a breach-of-contract action.

For all of these reasons, the Court grants Plaintiff's motion for summary judgment on its breach-of-contract claim against Defendant Nissan.

**B.     Whether Defendants Auto Group and Simao Are Liable for Breach of Contract Under the Continuing Guaranties**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 46, Attach. 9 [Plf.'s Memo. of Law].  The Court would only add one point.

As Defendant Simao's counsel states in his affirmation in opposition to Plaintiff's motion for summary judgment, Defendant Simao's liability (and Defendant Auto Group's liability) in this action hinges on a finding that Defendant Nissan is liable under the Wholesale Financing Agreement.  (Dkt. No. 49 at 1.)  Because the Court finds that Defendant Nissan has breached the Wholesale Financing Agreement, as discussed above in Part III.A. of this Decision and Order, and because Defendants Auto Group and Simao have not adduced sufficient admissible evidence creating a genuine dispute of material fact as to whether they are liable under the Continuing Guaranties upon a finding of Defendant Nissan's liability under the Wholesale Financing Agreement, the Court finds that Defendants Auto Group and Simao have breached the Continuing Guaranties.

For these reasons, the Court grants Plaintiff's motion for summary judgment on its breach-of-contract claim against Defendants Auto Group and Simao.

### C.      Whether Plaintiff Is Entitled to Damages on Summary Judgment

Although Defendants challenge the admissibility of the Worksheet pursuant to Fed. R. Evid. 1002, Defendants fail to contest the specific amount of damages calculated by Voorhies in his affidavit.  (*See generally* Dkt. No. 48, Attach. 9 at 17-20.)  As a result, Plaintiff's burden on this issue is lightened, and Plaintiff "need only show the facial merit of its request."  *Rescuecom Corp.*, 2011 WL 2791272, at *3.  After carefully considering the parties' arguments and the relevant, admissible evidence, the Court finds that Defendants Nissan, Auto Group, and Simao are jointly and severally liable for $325,332.92 through June 27, 2012.[6]

In reaching this conclusion, the Court finds that Voorhies' affidavit alone is sufficient admissible evidence to satisfy Plaintiff's modest burden as it relates to damages.  Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.").  More specifically, the affidavit demonstrates (and Defendants do not dispute) that Voorhies has personal knowledge of the books and records relied upon to support the facts and calculations contained therein, and the affidavit contains admissible evidence.  (Dkt. No. 46, Attach. 1.)  In addition, the facts contained in Voorhies' affidavit

---

[6]      Voorhies' affidavit establishes that, as of September 1, 2011, Defendants owed Plaintiff a grand total of $316,212.62.  This amount is a sum of the following: a principal balance of $210,662.75; an interest balance of $64,746.95; a miscellaneous-repossession-expenses balance of $4,712.03; and dealership-monitoring-expenses balance of $36,090.62.  (Dkt. No. 46, Attach. 1.)  In addition, Voorhies' affidavit establishes that Defendants' total liability will include interest from September 1, 2011, through entry of judgment.  (*Id.*)  As a result, the Court calculated that, between September 1, 2011, and June 27, 2012, 301 days elapsed; and at an interest rate of $30.30 per diem, the total interest for that time period is $9,120.30.  Once this amount is added to Voorhies' grand total as of September 1, 2011, the Court finds that Defendants owe Plaintiff a final amount of $325,332.92 through June 27, 2012.

(which, again, are undisputed by Defendants) identify Defendant Nissan's obligations under the Wholesale Financing Agreement, and describe the events that affected Defendant Nissan's obligations. (*See generally* Dkt. No. 46, Attach. 1.)

Finally, although the Worksheet was not relied upon by the Court in determining the amount of damages owed by Defendants to Plaintiff, the Court notes that the Worksheet is admissible for the reasons stated in Plaintiff's reply memorandum of law. (*See generally* Dkt. No. 52 at 12-17.)

For all of these reasons, the Court finds that Plaintiff is entitled to summary judgment as to damages against Defendants Nissan, Auto Group, and Simao.

### D.       Whether Plaintiff Is Entitled to Attorneys Fees on Summary Judgment

Because Defendants have failed to contest Plaintiff's claim for attorneys fees and costs (*see generally* Dkt. No. 48), Plaintiff's burden on this issue is lightened, and Plaintiff "need only show the facial merit of its request." *Rescuecom Corp.*, 2011 WL 2791272, at *3. After carefully considering the matter, the Court finds that Plaintiff has adduced sufficient admissible evidence establishing that it is entitled to attorneys fees and costs upon the event of default by Defendant Nissan under the Wholesale Financing Agreement (Dkt. No. 46, Attach. 1 at 9 [Voorhies' affidavit]; Dkt. No. 46, Attach. 2 at 5 [Wholesale Financing Agreement]), and in the event Plaintiff institutes legal action "to enforce any of its rights against [Defendants]" under the Continuing Guaranties (Dkt. No. 46, Attach. 1 at 9 [Voorhies' affidavit]; Dkt. No. 46, Attach. 3 at 4-5, 9-10, 14-15 [Continuing Guaranties]).

For this reason, the Court finds that Plaintiff is entitled to reasonable attorneys fees and costs from Defendants Nissan, Auto Group, and Simao on summary judgment.

12

Plaintiff's counsel is directed to file a letter brief with the Court, within thirty days of the date of this Decision and Order, establishing the fees and costs it has incurred prosecuting the enforcement of the Wholesale Financing Agreement and Continuing Guarantees against Defendants Nissan, Auto Group, and Simao.  Defendants Nissan, Auto Group, and Simao are permitted to file a response to Plaintiff's letter brief with objections to Plaintiff's counsel's letter brief; however, Defendants Nissan, Auto Group, and Simao are advised that such response shall not contain legal arguments as to whether Plaintiff is entitled to attorneys fees and costs.  If Defendants Nissan, Auto Group, and Simao choose to file a response, such response is due fourteen (14) days from the date that Plaintiff's counsel file its letter brief.

### E.    Plaintiff's Remaining Claim for Damages Against Defendant Picarazzi

On March 12, 2010, the Court indicated to the parties that it would not decide the amount of damages owed by Defendant Picarazzi to Plaintiff until holding an evidentiary hearing.  (Dkt. No. 39.)  In ruling on Plaintiff's current motion for summary judgment, the Court has become persuaded that the issue of damages against Defendant Picarazzi can be decided based on the parties' papers, rather than at a hearing.  However, the Court could not do so on the current motion, because (given the Court's Order of March 12, 2010) Plaintiff's motion did not give Defendant Picarazzi fair notice that summary judgment might be entered against him on the issue of damages.  (*See generally* Dkt. No. 46.)

At this point, the Court is inclined to (1) grant Plaintiff a brief amount of time to file a motion for partial summary judgment on the issue of damages against Defendant Picarazzi, or (2) hold an evidentiary hearing on the issue, or (3) entertain a motion by Plaintiff to voluntarily discontinue its claims against Defendant Picarazzi.  The Court shall give Plaintiff thirty days from the date of this Decision and Order to notify the Court (and Defendant Picarazzi) as to how Plaintiff would prefer to proceed.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 46) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the Clerk of the Court is directed to issue a Judgment for Plaintiff and against Defendants Nissan, Auto Group, and Simao, awarding Plaintiff **THREE HUNDRED TWENTY-FIVE THOUSAND THREE HUNDRED THIRTY-TWO DOLLARS AND NINETY-TWO CENTS ($325,332.92)**, for which Defendants Nissan, Auto Group, and Simao are to be held jointly and severally liable; and it is further

**ORDERED** that, within **THIRTY (30) DAYS** of the date of this Decision and Order, counsel for Plaintiff shall submit a letter brief to the Court establishing the fees and costs it has incurred prosecuting the enforcement of the Wholesale Financing Agreement and Continuing Guaranties against Defendants Nissan, Auto Group, and Simao; and it is further

**ORDERED** that Defendants Nissan, Auto Group, and Simao are permitted to file a response to Plaintiff's letter brief with objections to Plaintiff's counsel's letter brief; however, Defendants Nissan, Auto Group, and Simao are advised that such response shall not contain legal arguments as to whether Plaintiff is entitled to attorneys fees and costs; if Defendants Nissan, Auto Group, and Simao choose to file a response, such response is due **FOURTEEN (14) DAYS** from the date that Plaintiff's counsel filed its letter brief; and it is further

**ORDERED** that Plaintiff is instructed to submit a letter to the Court and on notice to Defendant Picarazzi, within **THIRTY (30) DAYS** of this Decision and Order, informing the Court how it intends to proceed (if at all) against Defendant Picarazzi.

Dated: June 27, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge